**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TOMAS NOVAK, INDIVIDUALLY and ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

ENDAVA PLC, JOHN EDWARD COTTERELL, and MARK THURSTON,

Defendants.

Case No.

**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Jury Trial Demanded

Plaintiff Tomas Novak ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed and furnished by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Defendant Endava plc ("Endava" or the "Company") common stock between September 4, 2025, through September 21, 2026, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2. Endava is a British technology services and IT consultancy company. Endava builds customized software and provides digital strategy, digital product acceleration, digital engineering, data and AI, and managed services to clients.

3. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material facts, including that: (1) Endava's accounting treatment of certain customer contract extensions and related client credits was improper; (2) as a result, the Company was reasonably likely to face an investigation by the Audit Committee of its Board of Directors, which would result in Defendant Thurston being placed on administrative leave and a delay in the release of its fourth quarter and full year 2026 financial results; (3) Defendants therefore lacked a reasonable basis for their positive statements regarding these contract

extensions; and (4) that the Company's publicly reported financial results might be materially false and misleading.

4. On September 21, 2026, Endava announced that Mark Thurston, Chief Financial Officer, was being placed on administrative leave "pending the conclusion of an ongoing investigation being conducted by independent outside counsel for the Board's Audit Committee, which was initiated in response to concerns about the Company's accounting treatment of certain customer and supplier agreements and related matters." Conor McShane was named as interim Chief Financial Officer.

5. In reaction to this news, Endava's stock price declined $.68 per share, or 24% from its closing price of $2.79 per share on September 21, 2026 to $2.11 per share on September 22, 2026. The stock continued to decline to close at $1.70 per share on September 24, 2026.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

7. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

11. In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

12. Plaintiff Tomas Novak acquired and held shares of the Company at artificially inflated prices during the class period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

13. Defendant Endava is incorporated under the laws of England and Wales with its principal place of business in London, United Kingdom. The Company trades on the New York Stock Exchange under the ticker symbol DAVA.

14. Defendant John Edward Cotterell ("Cotterell") has served as the Chief Executive Officer of Endava since its founding in 2000.

15. Defendant Mark Thurston ("Thurston") has served as Endava's Chief Financial Officer since 2015. On September 21, 2026, Endava's board placed him on administrative leave.

16. Collectively, Cotterell and Thurston are referred to throughout this complaint as the "Individual Defendants."

17. The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants

authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their position with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

18. Endava is a British technology services and IT consultancy company. Endava builds customized software and provides digital strategy, digital product acceleration, digital engineering, data and AI, and managed services to clients. In recent years, Endava has undertook a transition to becoming AI-native.

19. In 2025, Endava rolled out Dava.Flow™, an AI-native operational and delivery framework that purportedly integrates agentic automation and human judgment across the software engagement lifecycle. Endava also partners with AI tools from OpenAI, Microsoft, Google, AWS, and Cognition. These AI tools let a smaller team do the same work faster, reducing Endava's headcount. This transition required that Endava shifted how it earned revenue: rather than on a time-and-materials basis, Endava has moved toward fixed-price or outcome-based contracts, which charge for the result delivered rather than the hours worked.

20. Endava reports revenue by industry vertical—by breaking total revenue into categories based on the industry its clients are in. Payments has historically been one of the Company's largest and most strategic industries. Endava's Payments clients include payment processors, card networks, merchant acquirers, and digital payments companies.

21. Throughout the Class Period, Defendants repeatedly touted contract extensions with significant Payments clients secured because of "improved terms of trade." Defendants also acknowledged an "unexpected" client credit that "wasn't driven by poor performance or delivery issues," but rather "to secure future sort of pipeline of work with them." However, Defendants did not reveal that these customer agreements would raise concerns about the Company's accounting treatment of these matters. The truth was revealed on September 21, 2026, when Defendant Thurston, the Company's CFO, was placed on administrative leave pending the conclusion of an investigation from the Board's Audit Committee "which was initiated in response to concerns about the Company's accounting treatment of certain customer and supplier agreements and related matters."

**DEFENDANTS' MATERIALLY FALSE AND**

**MISLEADING STATEMENTS AND OMISSIONS**

22. The Class Period begins on September 4, 2025. On that day, Endava hosted its fourth quarter and fiscal year 2025 conference call. In his opening remarks, Defendant Thurston described the Company's free cash flow. He stated:

> Our adjusted free cash flow was a negative GBP 4.0 million for the 3 months ended June 30, 2025, compared to a positive GBP 6.6 million during the same period last fiscal year. ***Our adjusted free cash flow in the quarter was mainly impacted by an agreement to extend our relationship with an existing key client. As part of securing the contracts, we agreed improved terms of trade for them***, which resulted in payments for work performed in FY '25 being delayed into Q1 FY '26.

23. This statement describing "an agreement to extend our relationship with an existing key client" was materially false and misleading when made, because of the currently "ongoing investigation being conducted by independent outside counsel for the Board's Audit Committee, which was initiated in response to concerns about the Company's accounting treatment of certain customer and supplier agreements and related matters."

24. On November 11, 2025, Endava hosted its first quarter fiscal year 2026 conference call ("1Q26 Earnings Call"). In his opening remarks, Defendant Cotterell stated: "***The first quarter results were lower than guided primarily due to an unexpected credit made to a client that arose subsequent to our last earnings call*** as well as certain non-large strategic pipeline opportunities that did not convert into revenue during the quarter as anticipated."

25. Later on in the 1Q26 Earnings Call, analyst Bryan C. Bergin from TD Cowen asked:

> I guess I'll start on the client credit. Can you share some more detail on this credit that was not foreseen and weighed on performance? Just any sizing of that in context? Curious if that was due to company execution or maybe a choice by the client made to pull back on something? Is it isolated or could this reoccur elsewhere?
>
> Defendant Thurston responded:
>
> ***So it was unexpected, Brian. It arrived after we guided last quarter. It isn't related to remediating work. I'll qualify it as being a more procedural matter***. In terms of the impact, if it hadn't have happened, we would have been at around the bottom of the revenue guide and certainly in terms of EPS, we would have been right in the middle of the range that we set last quarter. I can't really go into any more detail than that at this stage.

26. On November 18, 2025, Endava presented at the J.P. Morgan 2025 Ultimate Services Investor Conference. At the conference Puneet Jain, an analyst from JPMorgan, asked: "You reported recently results came in slightly below expectations. So talk to us like what are the trends, high-level trends you are seeing? What were the drivers for the weakness or for the shortfall? And what do you expect going forward?" Defendant Thurston answered:

> Yes. So it was mainly a top line hit or miss. ***We suffered an unexpected credit with a significant client. It wasn't driven by poor performance or delivery issues. It was basically to secure future sort of pipeline of work with them.*** So it was unexpected, and it was issued after -- or the discussion was entered into after the

> guide. Now taking the revenue off, it impacted our EPS. It went straight through to the bottom line. So we were just short on the revenue and we would have been in the middle of the EPS for the quarter, if not for that item.

27. The statements in ¶¶25-26, including describing the "unexpected credit with a significant client …to secure future sort of pipeline of work with them" "being a more procedural matter" were materially false and misleading when made because of the currently "ongoing investigation being conducted by independent outside counsel for the Board's Audit Committee, which was initiated in response to concerns about the Company's accounting treatment of certain customer and supplier agreements and related matters."

28. On February 19, 2026, Endava hosted its second quarter fiscal year 2026 conference call ("2Q26 Earnings Call"). In his opening remarks, Defendant Cotterell stated: "***We extended our strategic delivery commitments with 2 of our largest payments customers***, reinforcing the strength and retained trust and delivery assurance we continue to enjoy with these major industry names."

29. Later on in the 2Q26 Earnings Call, Puneet Jain, a JPMorgan analyst, asked:

> Got it. Got it. And then I think you also mentioned extending commitments with 2 largest Payment clients. Can you share more details like around the scope, type of work? And if we should expect continued sequential growth beyond this year, given like the pipeline and overall opportunities you see?

Defendant Cotterell responded:

> Yes. ***So that was extensions of work with a couple of our larger Payments clients, in fact, the 2 largest***. There's been quite a stream of that coming through as we went through the new calendar year coming into play. And most of it is extensions.
>
> There is a little bit of incremental in it, but most of it is extensions on the run rate level that we had in Q1 and Q2. The relationships remain good. The sort of work is in the switch gateway type space and continuing to help our clients to rationalize

> the costs of those estates, but then also enhance the value propositions for customers coming out of their capabilities in that space.

30. The statements in ¶¶28-29, including describing the "extensions of work with a couple of our larger Payments clients, in fact, the 2 largest," were materially false and misleading when made because of the currently "ongoing investigation being conducted by independent outside counsel for the Board's Audit Committee, which was initiated in response to concerns about the Company's accounting treatment of certain customer and supplier agreements and related matters."

31. The truth was revealed on September 21, 2026, when Endava announced that Mark Thurston, Chief Financial Officer, was being placed on administrative leave "pending the conclusion of an ongoing investigation being conducted by independent outside counsel for the Board's Audit Committee, which was initiated in response to concerns about the Company's accounting treatment of certain customer and supplier agreements and related matters."

32. Endava's stock price dropped in the aftermath of the announcement of the investigation. The Company's stock price fell $.68 per share, or 24% from its closing price of $2.79 per share on September 21, 2026 to $2.11 per share on September 22, 2026. The stock continued to decline to close at $1.70 per share on September 24, 2026.

## ADDITIONAL SCIENTER ALLEGATIONS

33. As alleged herein, Defendants acted with scienter in that they knew the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents and in actions intended to manipulate the market

price of Endava common stock as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Endava, their control over, and/or receipt or modification of, the Company's allegedly materially misleading misstatements, and/or their associations with the Company that made them privy to confidential proprietary information concerning Endava, participated in the fraudulent scheme alleged herein.

34. As such, the Individual Defendants knew or were reckless in not knowing of the undisclosed facts detailed herein.

## LOSS CAUSATION

35. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

36. On September 21, 2026, Endava announced that Defendant Thurston was being placed on administrative leave while the Board's Audit Committee investigated Endava's accounting treatment of certain customer and supplier agreements and related matters. The Company's stock price fell $.68 per share, or 24% from its closing price of $2.79 per share on September 21, 2026 to $2.11 per share on September 22, 2026. The stock continued to decline to close at $1.70 per share on September 24, 2026.

37. The decline in Endava's stock price is directly attributable to the Company's announcement regarding the Audit Committee's investigation.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

38. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b. The omissions and misrepresentations were material;

c. The Company's common stock traded in efficient markets;

d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e. Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

39. At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed and furnished periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

**NO SAFE HARBOR**

40. The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

41. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**CLASS ACTION ALLEGATIONS:**

42. Plaintiff brings this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired DAVA common stock between September 4, 2025, through September 21, 2026, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

43. The members of the Class are so numerous that joinder of all members is impracticable. Investors purchased millions of shares of Endava during the class period. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

44. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a. Whether the Exchange Act was violated by Defendants;

b. Whether Defendants omitted and/or misrepresented material facts;

c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e. Whether the price of the Company's stock was artificially inflated; and

f. The extent of damage sustained by Class members and the appropriate measure of damages.

45. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

46. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

47. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION

### Count I
### Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder (Against All Defendants)

48. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

51. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if

they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**Count II**
**Violation of § 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

52. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

(c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

DATED: September 30, 2026

Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com

*Counsel for Plaintiff Tomas Novak*

**Certification Pursuant to Federal Securities Laws**

I, Tomas Novak, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

1. I have reviewed a Complaint against Endava plc ("Endava" or the "Company") and authorize the filing of a comparable complaint on my behalf.

2. I did not transact in Endava securities at the direction of plaintiff's counsel, or in order to participate in any private action under the federal securities laws.

3. I am willing to serve as a representative party on behalf of a class of investors who purchased or otherwise acquired Endava securities during the Class Period, as specified in the Complaint; including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

4. Attached hereto as Schedule A is a list of all of my transactions in Endava securities during the Class Period, as specified in the Complaint.

5. During the past three years, I have not sought to serve as a representative party on behalf of a class under federal securities laws.

6. I will not accept payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court in accordance with 15 U.S.C. 78u-4(a)(4).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: September 30, 2026

______________________________
Tomas Novak

**Schedule A**

Tomas Novak's Transactions in Endava plc (NYSE: DAVA) securities:

| Type of Security | Date | Transaction | Quantity | Price (USD) |
|---|---|---|---|---|
| American Depositary Shares (ADSs) | February 2, 2026 | Buy | 10 | $6.25 |
| American Depositary Shares (ADSs) | August 11, 2026 | Buy | 10 | $3.05 |